Filed
D.C. Superior Court
05/28/2016 12:38PM
Clerk of the Court

## SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA

MEDICAL FACULTY ASSOCIATES, INC.    )
    2150 Pennsylvania Avenue, NW    )
    Washington, DC 20037    )
                            )
               Plaintiff,    )
                            )    Case No.   2016 CA 003720 B
v.    )
                            )
SCOTT C. FAUCETT, MD    )
    6808 Walhonding Road    )
    Bethesda, MD 20816    )
                            )
  and    )
                            )
THE ORTHOPAEDIC CENTER, P.A.    )
    9420 Key West Avenue, Suite 300    )
    Rockville, MD 20850    )
                            )
              Defendants.    )

## COMPLAINT FOR INJUNCTIVE AND MONETARY RELIEF

Medical Faculty Associates, Inc. ("MFA"), through counsel, alleges:

### INTRODUCTION

1.     This case arises from the facts and circumstances of Defendant Scott C. Faucett's breach of his Employment Agreement and his breach of the duty of loyalty he owed to MFA.

2.     It is an action for breach of contract, breach of duty of loyalty, and tortious interference with economic relations. MFA also seeks injunctive relief and a declaratory judgment.

3.     As a condition of his employment with MFA, Faucett signed an Employment Agreement ("Agreement"). (A copy of the Agreement is attached as Exhibit 1)

27025285v.1

4.     The Agreement prohibits Faucett from, among other things: (a) engaging in activity of a remunerative nature outside his employment with MFA; (b) for one year following the termination of his employment at MFA, maintaining an office or providing clinical services within five miles of any hospital where he provided services while employed by MFA; and (c) for one year following the termination of his employment at MFA, soliciting MFA employees, customers, clients and patients.

5.     The Agreement permits Faucett, however, to "buy out" the non competition restriction, by paying MFA the annual salary he was paid for the full year immediately preceding the termination of his employment.

6.     During his employment with MFA, Faucett made clear that, in violation of his Agreement, he would establish a competing practice within the prohibited five mile radius and that he would solicit MFA patients.

7.     In fact, while still an MFA employee and without notifying or obtaining permission from MFA, Faucett established a competing medical practice within five miles of MFA and began advertising his performance of clinical services, and also solicited MFA patients to move to his new practice.

8.     Faucett affiliated with The Orthopaedic Center, P.A. a division of the Centers for Advanced Orthopaedics, LLC, which is itself an integrated group of more than 145 physicians in the DC Metro area and an MFA competitor, in order to establish his competing practice.

9.     Faucett breached his Agreement and the duty of loyalty he owed MFA, and is interfering with MFA's relationships with its patients.

10.     The Orthopaedic Center tortiously interfered with MFA's contractual relationship with Faucett, and is interfering with MFA's relationships with its patients.

2

27025285v.1

## PARTIES

11.     Medical Faculty Associates, Inc., is a District of Columbia corporation with its principal place of business in Washington, D.C.  MFA is a nonprofit physician led practice group, offering comprehensive patient care.

12.     Faucett is an orthopaedic surgeon who previously worked for MFA from its offices in the District of Columbia.  His residence is 6808 Walhonding Road, Bethesda, Maryland.  Faucett now works for The Orthopaedic Center, P.A.

13.     The Orthopaedic Center, P.A. is licensed to do business in Maryland, with its headquarters at 9420 Key West Avenue, Suite 300, Rockville, Maryland, 20850.  Despite opening an office in Washington, D.C. to provide a location for Faucett to practice and compete against MFA, The Orthopaedic Center has not registered to do business in the District.

## JURISDICTION AND VENUE

14.     Jurisdiction is proper based on D.C. Code § 11-921.  MFA is a D.C. corporation and the facts and circumstances of this action arose and occurred in the District of Columbic, where Faucett worked and continues to work.

## FACTS

### Faucett Promises Not To Compete Or Solicit

15.     MFA operates in an extremely competitive environment, particularly with respect to the development and maintenance of its patient relationships.

16.     In April 2013, MFA hired Faucett as a physician.

17.     MFA invested in Faucett's development and provided him with access to its patients, resources and affiliations with the George Washington University and George Washington University Hospital.

3

27025285v.1

18.     MFA recommended Faucett for an academic appointment as an Assistant Professor of Orthopedic Surgery with the George Washington University School of Medicine and Health Sciences, with all the rights and privileges thereto.

19.     Based on MFA's hiring and recommendation, Faucett received the appointment.

20.     As a part of and condition of his employment with MFA, Faucett entered into an Agreement that contains, among other things, a prohibition on being employed other than by MFA.

21.     The Agreement also contains a promise not to compete, whereby Faucett agreed that he would not maintain an office or provide clinical services (other than in cases of emergency) within a five mile radius of any affiliate hospital at which he practiced while employed by MFA, and any practice location at which he was assigned by MFA, within the two years preceding his termination.

22.     The Agreement further contains a promise not to solicit, whereby Faucett agreed that he would not solicit any MFA employee, customer, client or patient, for one year following the termination of his employment. Similarly, that he would not attempt to influence anyone to reduce or alter its business relationship with MFA.

23.     The Agreement also contains Faucett's promise and agreement that MFA is entitled to injunctive relief in the event of a violation of the foregoing provisions.

24.     Finally, the Agreement provides Faucett the opportunity to "buy out" the non compete portion, by paying MFA an amount equal to his full year salary paid in the year preceding termination of employment.

25.     From May 16, 2015 to May 15, 2016, MFA paid Faucett $415,914.58.

**Faucett Forms Competing Practice**

4

26.     Unbeknownst to MFA, during his employment with MFA, Faucett affiliated with the Orthopaedic Center, P.A./Centers for Advanced Orthopaedics, and rented medical office space at 2112 F Street, NW, Washington, D.C.

27.     2112 F Street is within a five mile radius of MFA and GW Hospital.

28.     Faucett made various web postings, advertising his new and competing clinical practice. Faucett did not disclose or seek MFA's permission for such activities.

29.     Faucett submitted his resignation to MFA on February 15, 2016, with an effective date of May 15, 2016.

30.     After MFA learned of the positing and repeatedly demanded it be taken down, Faucett took down the postings advertising his new and competing practice, but continued to maintain that he would practice within the five mile radius and that he would solicit MFA patients.

31.     Faced with the prospect of not being able to pursue his competing venture within a five mile radius of MFA, Faucett sought to exercise the "buy out" provision of his Agreement. He was informed that, in order to do so, he was required to pay MFA $415,914.58, the amount MFA paid him in the preceding year.

32.     On May 13, 2016, just two days before the termination of his employment, and despite MFA's clear statement of the amount necessary to effectuate a buy out of the non competition portion of his Agreement, Faucett provided a check in the amount of $325,000.00.

33.     The check was issued by the Orthopaedic Center, P.A.

34.     Because the check fails to pay MFA the required amount, it similarly fails to affect a buy out and, therefore, Faucett is precluded by his Agreement from practicing at 2112 F. Street or anywhere within a five mile radius of MFA and GW Hospital.

5

35.     In breach of the promises that he made, however, Faucett is now practicing at 2112 F. Street and soliciting MFA patients.

36.     The Orthopaedic Center is and has been aware of MFA's Agreement with Faucett, but nevertheless desires to assist Faucett in establishing a competing practice and in soliciting MFA patients. In fact, as evidenced by its payment, The Orthopaedic Center is funding Faucett's efforts to compete against MFA and take its patients.

37.     The Orthopaedic Center's website now identifies Faucett as being an employee, practicing at 2112 F Street, NW, Washington, D.C.

38.     Faucett has no intention of honoring the promises he made and The Orthopaedic Center has no intention of competing freely and fairly in the marketplace.

### COUNT I-BREACH OF CONTRACT

39.     MFA re-alleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

40.     As a part of and condition of his employment, Faucett entered into an Employment Agreement with MFA. Faucett breached his Agreement with MFA by, among other things, (a) forming a practice with the intent of competing and seeking to compete and competing directly with MFA within the five mile radius prohibited by his Agreement; and (b) soliciting MFA patients and customers, and seeking to solicit MFA patients and customers.

41.     Faucett also breached his Agreement by failing to pay MFA the amount of monies required to effectuate a buy out of the non competition provision.

### COUNT II-BREACH OF DUTY OF LOYALTY

42.     MFA re-alleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

6

27025285v.1

43.     At all times during the scope of his employment by MFA, Faucett owed a duty of loyalty to MFA such that, among other things, he was required to act exclusively for the benefit of MFA, provide MFA with the full measure and benefit of his services, refrain from performing services for or on behalf of companies or entities other than MFA, and to fully disclose any actual or potential conflicts of interest relevant to his duties to MFA.

44.     During the course and scope of his employment with MFA and thereafter, Faucett breached his duty of loyalty owed to MFA by, among other things, (a) establishing and advertising a competing business while still employed by MFA; (b) failing to devote his full time and energies to MFA, (c) failing to act in the best interests of MFA; (d) failing to disclose information that would be valuable to MFA in the conduct of its own business; (e) soliciting MFA patients to leave MFA while he was still employed by MFA; (f) upon information and belief, disparaging MFA to its employees and others; and (g) depriving MFA of the full use and benefit of his services.

45.     By doing so, Faucett acted oppressively, maliciously, and intentionally with specific intent to injure MFA.

46.     MFA paid Faucett all compensation during the entire period of his employment.

47.     As a result of Faucett's breaches, MFA has been injured irreparably and otherwise, as to be determined at trial.

### COUNT III-TORTIOUS INTERFERENCE (Faucett and The Orthopaedic Center)

48.     MFA re-alleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

49.     MFA, through its ongoing relationship with its patients, has a legitimate business expectancy that it will continue to provide services to those patients.

7

27025285v.1

50.   Faucett had knowledge of the relationship between MFA and its patients, as well as the expectancy that MFA will continue to provide services to those patients.

51.   Faucett, by taking MFA's patients in derogation of the promises he made, intentionally interfered with MFA's business expectancy and obtained business which MFA had a legitimate expectation of receiving and likely would have received.

52.   The Orthopaedic Center was fully aware of Faucett's Agreement with MFA. Nevertheless, the Orthopaedic Center has funded Faucett and is assisting and encouraging him to breach the promises he made to the MFA.

53.   The Orthopaedic Center is intentionally interfering with MFA's contractual relationship with Faucett.  It aided Faucett in willfully breaching his Agreement and has, upon information and belief, promised to fund litigation so that he may attempt to breach the commitments that he made.

54.   The Orthopaedic Center is also, through Faucett, intentionally interfering with MFA's relationships with its patients.  It seeks to take those patients from MFA.

55.   The Orthopaedic Center seeks to compete with MFA, not through a free and fair marketplace, but instead by taking the short cut of taking its employees and patients, and encouraging MFA employees to violate the promises that they made to MFA.

## COUNT IV-DECLARATORY JUDGMENT

56.   MFA re-alleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

57.   As noted herein, as consideration for his employment with MFA, Faucett entered into an Employment Agreement, which contained, among other things, non-compete and non-solicitation provisions.

8

58.     The non-compete and non-solicitation provisions are reasonable, in accordance with public policy, and designed to provide MFA only the protection necessary to protect its legitimate business interests.  The provisions are not unduly harsh or oppressive toward Faucett.

59.     Despite having signed the Agreement, and acknowledging his responsibilities and obligations therein, Faucett purposefully engaged in behavior in violation and of that Agreement.

60.     Upon information and belief, Faucett will assert that he should not be bound by his Agreement or the non-compete and non-solicitation provisions therein.

WHEREFORE, MFA respectfully prays for this Court:

(a) to declare that the non-compete and non-solicitation provisions of the Agreement  are valid and binding;  (b) to declare that the non-compete and non-solicitation provisions are reasonable and valid and no greater than is necessary to protect MFA in its legitimate business interests; (c) to declare that the non-compete and non-solicitation provisions are not unduly harsh and oppressive toward Faucett's efforts to earn a livelihood; and (d) to declare that the non-compete and non-solicitation provisions are reasonable from the standpoint of sound public policy.

## RELIEF REQUESTED

WHEREFORE, MFA respectfully prays for this Court to:

A.      Enjoin Faucett preliminarily and, ultimately, for the one year term of his Agreement (from the date of judgment) from providing clinical services within a five mile radius of any affiliate hospital at which he practiced while employed by MFA, and any practice location at which he was assigned by MFA, within the two years preceding his termination;

9

27025285v.1

B.      Enjoin Faucett preliminarily and, ultimately, for the one year term of his Agreement (from the date of judgment), from soliciting MFA patients, customers and employees;

C.      Enter judgment in favor of MFA and against Faucett and The Orthopaedic Center, P.A., in an amount to be proven at trial, together with interest, costs, attorneys' fees, and such other and further relief as the Court deems just and proper;

D.      Award punitive damages against Defendants in an amount according to proof;

E.      Award MFA the costs of this action, including MFA's reasonable attorneys' fees; and;

F.      Grant MFA such other and further relief as may be just and equitable.

Respectfully submitted,

MEDICAL FACULTY ASSOCIATES, INC.

By: _____
Raymond C. Baldwin, Esq. (DC Bar No. 461514)

SEYFARTH SHAW LLP
975 F Street, NW
Washington, DC 20004
(202) 463-2400 (ph)
(202) 828-5393 (fax)

Dated: May 20, 2016          Attorneys for MFA

10

# EXHIBIT 1

**THE GEORGE WASHINGTON UNIVERSITY**
**MEDICAL FACULTY ASSOCIATES**

**ACADEMIC**

**FULL-TIME PHYSICIAN EMPLOYMENT AGREEMENT**

**THIS PHYSICIAN EMPLOYMENT AGREEMENT** (the "Agreement") is hereby made and entered into as of the Effective Date shown below by and between the Physician ("Physician") whose signature appears below and Medical Faculty Associates, Inc. doing business as The George Washington University Medical Faculty Associates ("MFA").

**WHEREAS,** MFA is a non-profit tax exempt corporation that employs physicians from various specialties to provide clinical, administrative and teaching services, to participate in certain research activities, to further MFA's tax-exempt mission and to fulfill MFA's contractual commitments to The George Washington University, including The George Washington University School of Medicine, The George Washington University Hospital, and other entities; and

**WHEREAS,** Physician is a licensed physician who wishes to become an employee of MFA for these purposes according to the terms of this Agreement; and

**WHEREAS,** MFA wishes to employ Physician according to the terms of this Agreement;

**NOW, THEREFORE,** for good and valuable consideration, the sufficiency of which each party hereby acknowledges, the parties agree as follows:

1. **Definitions.** When used herein, the following terms shall have the meanings set forth below unless the context otherwise requires:

    1.1. **MFA Policies:** MFA's organizational documents (consisting of MFA's Articles of Incorporation, Bylaws and application upon which tax-exempt status was granted by IRS), the MFA Corporate Compliance Program, Risk Management Program and all other MFA policies and procedures.

    1.2. **Agreement:** This full-time physician employment agreement.

    1.3. **CEO:** The Chief Executive Officer of MFA.

    1.4. **Department Chair:** The chair of the MFA clinical department to which the Physician is primarily assigned.

    1.5. **Department:** The MFA clinical department to which the Physician is primarily assigned.

    1.6. **Department Plan:** The productivity incentive plan developed and implemented by a particular department.

1.7.    Duties:  The description of duties of Physician as set forth in Exhibit A.

1.8.    Effective Date:  The date of commencement of this Agreement as shown at the end of the Agreement.

1.9.    Faculty Member:  A physician who has been recommended for an appointment as a member of the academic faculty of The George Washington University.

1.10.    MFA:  Medical Faculty Associates, Inc.

1.11.    MFA Practice Plan:  The compensation plan that provides financial and other incentives to advance the programmatic objective and financial viability of MFA.

1.12.    Physician:  The physician whose signature appears at the end of the Agreement.

1.13.    President:  The president of MFA.

1.14.    Prime Rate:  The prime rate as determined by the Wall Street Journal.

1.15.    Restricted Period:  A period of one (1) year following expiration or termination of this Agreement.

1.16.    Term:  The term of this Agreement commencing on the Effective Date and until the coming June 30, and thereafter automatically renewing for a period of one (1) year ending June 30th of each year, unless terminated earlier in accordance with this Agreement.

1.17.    University:  The George Washington University.

2.  Employment.

2.1.    MFA hereby employs Physician to perform the duties associated with the clinical, teaching, administrative and other operations of MFA, and Physician hereby accepts such employment, upon all of the terms and conditions as hereinafter set forth, including but not limited to the Duties attached at Exhibit A hereto.

2.2.    Physician shall devote his/her best efforts to perform diligently the Duties, and shall act at all times consistent with standards of professional ethics and practice and all applicable federal and state laws.  Physician shall meet such criteria as established by MFA from time to time, and shall perform and discharge well and faithfully all duties as may be assigned by MFA from time to time.

3.  Physician's Obligations.

3.1.    Representations and Warranties.  Physician represents and warrants that he/she is fully authorized and capable of performing the duties and obligations hereunder and that he/she is not restricted in any way from performing such Duties and obligations whether by a non-competition, non-solicitation agreement or otherwise and that any such restriction has been disclosed to MFA's

CEO and President.

3.2.    <u>Licensure, Privileges and Managed Care Participation</u>.  At all times during employment hereunder, Physician shall: (i) hold a currently valid and unlimited license to practice medicine in the District of Columbia and in such other jurisdictions (e.g., Maryland and Virginia) as reasonably requested by MFA to perform under this Agreement and currently effective DEA registration; (ii) have unrestricted medical staff membership, full clinical privileges and be credentialed at institutions necessary to fulfill the Physician's Duties hereunder, including affiliated hospitals, and as MFA may reasonably request from time to time; (iii) be credentialed and eligible to participate in managed care plans in which MFA participates, or seeks to participate, as such plans are identified by MFA; and (iv) participate in Medicare and applicable Medicaid Programs (and such other state and federal health care programs as MFA reasonably may designate from time to time).  Physician shall provide to MFA immediately upon his/her receipt a copy of any written notices, actions or decisions adverse (or potentially adverse) to Physician's license, DEA registration, medical staff privileges, managed care participation or participation in Medicare or Medicaid programs.

3.3.    <u>Compliance with MFA Organizational Documents, Compliance Program and Human Resources Policies</u>. At all times, Physician shall comply with and be subject to the MFA's Policies, as such may be developed and/or amended by MFA in its sole discretion.

3.4.    <u>Other Compliance Obligations</u>. At all times, Physician shall comply with:

3.4.1.    Medical staff bylaws, rules and regulations of the medical staff of any hospital at which the Physician has privileges, as such medical staff bylaws may be amended by the hospital(s) in its discretion;

3.4.2.    All applicable provisions of the University Faculty Code and Faculty Handbook, terms set forth in the Physician's academic appointment letter from the University and other rules and regulations of the University as developed and/or amended by the University in its discretion;

3.4.3.    All applicable MFA, affiliate hospital and University policies and guidelines, including timely submission of credentialing documentation, including source documentation to the MFA for managed care credentialing;

3.4.4.    All federal, state and local laws and regulatory requirements;

3.4.5.    All applicable MFA and affiliate hospital policies and procedures, including, but not limited to, requirements concerning rendering services, billing, compliance, supervision of residents, risk management, medical records documentation and documentation of services by teaching physicians; and

3.4.6.    All applicable MFA policies on timely scheduling of all patients and cancellation of patient appointments, correspondence with referring physicians, compliance with MFA utilization targets and strategic planning, and compliance with payor contracts;

3.4.7.    All terms and conditions for participation in managed care contracts entered into by MFA;

3.4.8.   All applicable MFA departmental manuals, policies and procedures (as such may be modified by MFA from time to time in its discretion); and

3.4.9.   All assignments or directives from the Department Chair of the department in which Physician practices.

3.5.   Insurance Requirements. At all times, Physician must be eligible to be insured for professional liability insurance carrying the limits and subject to the deductibles and retention desired by MFA at rates reasonably consistent with other MFA employed Physicians. Physician shall provide immediately to MFA any notices of claims received by Physician which involve professional liability insurance or any adverse action or modification to the terms and conditions of such coverage.

## 4.   Physician Compensation and Billing Obligations.

4.1.   Physician shall be paid by MFA the annual draw indicated in the cover letter to this Agreement and any subsequent renewal letter(s) (which are incorporated hereto) and otherwise in accordance with the MFA Practice Plan, and applicable Department Plans if any, as such Plans may be amended from time to time.

4.2.   MFA shall have the exclusive right to charge, bill and collect in Physician's name for all amounts due for professional services rendered by Physician during the term of this Agreement, which amounts shall belong to MFA. Physician hereby assigns to MFA the exclusive right to bill and collect for all of such Physician's professional services.  All copayments, deductibles and coinsurance collected in connection with services rendered by Physician during the term of this Agreement also belong to MFA. MFA has the exclusive right to charge, bill, collect and retain all amounts for technical and ancillary services rendered in connection with Physician's professional services. Any money collected by Physician for these amounts shall immediately be turned over to MFA.  This Section 4.2 shall survive the expiration or termination of this Agreement for any reasons.

4.3.   Physician may provide the Duties only at and/or for institutions or sites approved by the appropriate Department Chair and MFA's CEO, which may be granted or denied in their sole discretion.

## 5.   Other Physician Benefits.

5.1.   Professional Expense Account.   Physician may be entitled to payment and/or reimbursement of certain approved categories of professional expenses, if such expenses are approved by the Department Chair, in his/her discretion, and only as authorized per MFA policy.

5.2.   Professional Liability Coverage.   MFA shall provide professional liability insurance coverage for services rendered by Physician in accordance with Physician's employment with MFA either: i) through a commercial insurer, captive insurer, self-insurance and/or other funding mechanisms, or ii) by paying the premium to maintain Physician's professional liability insurance policy. Upon 120 days' notice to Physician, MFA may, at its sole discretion and cost, change the means by which it provides such professional liability insurance coverage. Such change shall not be effective until after the first year of employment. MFA also will provide extended reporting (i.e, tail

coverage) or retroactive coverage, on terms consistent with comparable practices, except as otherwise provided in this Agreement.

5.3.    Other Fringe Benefits. Physician is eligible for a retirement program, disability benefit plan, health insurance plan, and group life insurance as described in MFA policy, and subject to the conditions and limitations of such plans.

## 6.   Term and Termination.

6.1.    The term of this Agreement shall commence on the Effective Date shown at the end of the Agreement and shall remain in effect until the coming June 30, and thereafter shall automatically renew for a period of one (1) year ending June 30th of each year, unless terminated earlier in accordance with this Agreement.

6.2.    Notwithstanding Section 6.1, MFA may terminate this Agreement immediately, for cause, which shall include:

6.2.1.    termination, suspension or other limitation of membership on the medical staff or clinical privileges of any hospital at which Physician has privileges, for reasons other than a voluntary relinquishment of such membership or privileges unrelated to a review of professional conduct;

6.2.2.    loss or suspension of Physician's license to practice medicine in any jurisdiction material to Physician's performance under this Agreement;

6.2.3.    inability of MFA to procure commercially reasonable insurance coverage for Physician at rates and terms consistent with those paid by MFA for other employed physicians practicing in the same specialty;

6.2.4.    indictment, conviction of, plea or sentencing for a felony or, in the case of a misdemeanor, a misdemeanor that involves moral turpitude or other conduct that MFA could reasonably expect to have an adverse impact on the business or reputation of MFA or the University;

6.2.5.    termination by the University of Physician's appointment to the faculty of the University;

6.2.6.    exclusion of Physician from participation in the Medicare or Medicaid Programs;

6.2.7.    Physician's failure to perform his/her Duties hereunder, breach of medical ethics, or unprofessional or disruptive conduct by Physician which MFA, in its sole determination, finds to interfere with MFA's ability to provide quality care services to patients;

6.2.8.    Physician's use of an illegal substance, or any substance, including drugs or alcohol, which impairs Physician's ability to perform under this Agreement;

6.2.9.    fraud or dishonesty by Physician with respect to MFA, or its affiliates, patients, employees or vendors;

ACADEMIC MFA FT Employment Agreement (Rev 2012.10.25)                    Page 5 of 14

6.2.10. conduct by Physician which may be harmful to the business, interests or reputation of MFA, as determined by MFA management in its sole discretion;

6.2.11. death;

6.2.12. unauthorized outside employment or other activity that is believed by MFA in its sole discretion to create a conflict of interest; or

6.2.13. other actions by Physician which cause a loss in confidence by MFA or MFA management, as determined in their sole discretion, regarding Physician's ability to perform according to the terms of this Agreement, or the perception that Physician has lost such ability to perform and/or is determined to be not fit for duty.

6.2.14. Should Physician's employment terminate due to the reasons set forth in subsections above, other than 6.2.11, at MFA's discretion Physician shall be ineligible for any bonus and shall pay MFA an amount equivalent to the then market rates for professional liability insurance tail coverage for Physician. Physician agrees that any such costs may be deducted from his/her paycheck and that should the paycheck be insufficient to cover such expense, to pay such amount within thirty (30) days of termination. Physician further agrees that for payments made after thirty days from termination, he/she also shall pay interest at the then Prime Rate.

6.3. MFA may terminate this Agreement without cause:

6.3.1. Upon thirty (30) days' notice, if Physician primarily renders services to fulfill an MFA contract and such contract is discontinued.

6.3.2. Upon ninety (90) days' notice that the Agreement will terminate on the first renewal date of this Agreement.

6.3.3. Upon hundred eighty (180) days' notice that the Agreement will terminate on the second renewal date of this Agreement.

6.3.4. Upon one (1) year notice after the second renewal date of this Agreement.

6.4. Physician may terminate this Agreement upon ninety (90) days written notice as delivered to MFA's CEO and the Department Chair unless mutually agreed otherwise, except that in order to adequately schedule shifts, recruit, retain, conduct research and maintain teaching and other activities, Physician(s) in the Department of Emergency Medicine shall provide notice not later than December 31 for a termination date of the following June 30 and at least 12 months' notice for a termination date for any other day during the year. Physician acknowledges in this regard that MFA's offer and obligation to provide professional liability tail insurance is contingent on Physician's compliance with this notice provision, and that physician's entitlement to such coverage is not deemed "earned" until such time as Physician has terminated his/her employment in full compliance with this and other obligations contained in this Agreement. Should Physician fail to give the notice set forth in this section, Physician shall, by this Agreement, forfeit any right he/she might otherwise have to any bonus, and shall pay MFA an amount equivalent to the then market rates for professional liability insurance tail coverage for Physician. Physician agrees that any such

costs may be deducted from his/her paycheck and that should the paycheck be insufficient to cover such expense, to pay such amount within thirty (30) days of termination. Physician further agrees that for payments made after thirty days from termination, he/she also shall pay interest at the then Prime Rate. Physician further agrees that based on needs of a particular Department, a Department's incentive/bonus plan may lengthen the termination notice period required for Physician to earn such bonus, and that this Agreement does not entitle Physician to a bonus.

    6.5.   Obligations on Termination.

        6.5.1.  Physician no longer will be credentialed by the MFA, except to the extent to which MFA requires continuation of care and treatment, and Physician will need to enter participation agreements with managed care organizations on its own behalf. MFA shall not knowingly take actions for the purpose of limiting or hindering Physician's ability to obtain credentialing with managed care payers; provided, however, that nothing herein shall prevent MFA from responding in good faith to any inquiries or requests for information about Physician from payors.

        6.5.2.  Physician and MFA shall both use their best efforts to assure a smooth and orderly transition following non-renewal of this Agreement.

        6.5.3.  All patients or potential patients contacting MFA with respect to Physician or a particular Physician after the termination of this Agreement shall be politely informed that Physician or a particular Physician of whom the patient is inquiring is no longer affiliated with MFA.

        6.5.4.  Upon termination of this Agreement MFA at its own cost, shall have the right to send a notice to all patients announcing that Physician is no longer affiliated with MFA.

        6.5.5.  Upon termination of this Agreement, upon a patient's request to MFA, MFA shall provide to Physician a copy in PDF format of such patient's records. All records shall be the property of MFA, regardless if transferred to Physician and owned by Physician.

## 7.  Professional Conduct.

    7.1.   Physician acknowledges that during Physician's employment hereunder Physician will have contacts with and develop and service the patients of MFA and referring sources of business of each. In all of Physician's activities, Physician, through the nature of Physician's work, will have access to and will acquire confidential information related to the business and operations of MFA, including, without limiting the generality of the foregoing, patient lists and confidential information relating to processes, plans, methods of doing business and special needs of referring doctors and patients. MFA shall retain title to any patent or other intellectual property rights in new inventions or discoveries made solely by its employees as consistent with MFA's applicable policies, and the University's applicable policies as they may relate to Faculty Members. Physician acknowledges that all such information is solely the property of MFA and constitutes proprietary and confidential information of MFA; and the disclosure thereof would cause substantial loss to the goodwill of MFA; and that disclosure to Physician is being made only because of the position of trust and confidence that Physician will occupy.

7.2.    Physician covenants that, except as required by law, Physician will not, at any time during the Term or any time thereafter, disclose to any person, hospital, firm, partnership, entity or organization (except when authorized in writing by MFA) any information whatsoever pertaining to the business or operations of MFA or any affiliate thereof or of any other physician employed by MFA, including, without limitation, any of the kinds of information described in this Subparagraph 7.2.

7.3.    During the term of this Agreement, Physician may not engage in any activity of a remunerative nature outside his/her employment with MFA without the prior written approval of the Physician's Department Chair and MFA's CEO or President, and any amounts collected by Physician for services furnished without prior MFA approval shall belong to MFA and shall, if collected by Physician, be immediately turned over to MFA. The only exceptions to this rule are for: (1) management of personal investments; (2) occasional honoraria approved by the Physician's Department Chair or the MFA's President, (3) text royalties, (4) medico-legal consulting; and (5) other activities approved in advance in writing by Physician's Department Chair and MFA's President and/or CEO. Physician shall report annually to his/her Department Chair all professional or other relevant activities, whether paid or unpaid, so that issues of conflict of interest can be addressed under applicable policies.

7.4.    Physician agrees that in consideration for the compensation paid, use of MFA's name, reputation, platform and resources, MFA's investment in Physician's professional and practice development, contacts afforded, and the benefits provided to Physician, and the costs incurred by MFA hereunder, for the Restricted Period of one (1) year following expiration or termination of this Agreement, for any reason, Physician shall not maintain an office or provide (except in an emergency or other exceptional and non-recurring circumstances) clinical services, at any location within a radius of five miles of any affiliate hospital at which the Physician practices during the Term of this Agreement, the Ambulatory Care Center and any practice location at which Physician has been primarily assigned by MFA in the two years preceding expiration or termination of this Agreement ("Restricted Services"). Should Physician desire to render Restricted Services during the Restrictive Period, upon prior written request, MFA will waive this restriction upon payment to it of a sum of Physician's annual salary for the full year immediately preceding the date of Physician's termination. Physician agrees that rendering Restrictive Services in the Restrictive Period will cause MFA to suffer significant economic and non-economic losses and that the above buy-out is an incomplete, but reasonable and fair amount for liquidated damages to avoid enforcement action by MFA. Physician also expressly understands that this provision is an essential component of the Agreement for the MFA and that it is legally enforceable. This provision shall not apply to MFA Emergency Department Physicians who service contract(s) to staff an emergency department other than that of The George Washington University Hospital should the MFA lose such contract to staff those services, provided that Physician was not in any way involved in soliciting or competing for the contract that was lost by the MFA.

7.5.    During the term of this Agreement and for a period of one (1) year after its expiration and termination for any reason, Physician shall not (i) solicit for employment, induce to leave the MFA, or employ or engage for work, any person employed by the MFA or any customer or client of the MFA, without the prior written consent of the MFA, which consent may be granted or withheld in the discretion of the MFA; (ii) solicit any MFA patients, customers or clients, or send

announcements or publications regarding new offices or practice affiliations or companies to MFA patients, clients or customers, except that this provision shall not prohibit Physician from making announcements about such offices or practice arrangements to the general public in newspapers, periodicals, and mass mailings; (iii) influence or attempt to influence any payor, provider or other person or entity to cease, reduce or alter any business relationship with MFA; (iv) remove patient, customer or client records from MFA, other than according to Section 6.5.5 and Section 8 of this Agreement or with prior written approval of MFA's President or CEO; or (v) take, make, copy, or distribute in any way lists of MFA patients, clients, or customers, other than with the prior written consent of MFA's President or CEO.

7.6.    During the term of this Agreement and at all times thereafter, despite expiration or termination for any reason, Physician shall refrain from making any oral or written comment to any third party that is derogatory concerning the MFA, its physicians, or its services, and that is reasonably likely to adversely affect the MFA's reputation or business.

7.7.    The covenants on the part of Physician in this Section 7 shall be construed as an agreement independent of any other provision in this Agreement, and the existence of any other claims or causes of action by Physician against MFA, whether predicated on this Agreement or otherwise, shall not constitute a defense to the enforcement by MFA of said covenants. Physician acknowledges and agrees that the restrictions set forth in this Section 7 are necessary for the protection of MFA's legitimate business and professional interests and are reasonable in scope and content. The parties recognize that if the provisions in this Section 7 are breached or threatened to be breached by Physician, the extent of actual damages sustained by MFA will be difficult to ascertain, although great and irreparable, and that compensation at law will be inadequate, and that money damages alone may not be an appropriate measure of the harm to MFA from such continuing breach, especially because Physician's employment is part of a long range business plan. Therefore, the parties expressly agree that MFA shall have the right to injunctive relief for breach or threatened breach of such provisions, in addition to any other legal or equitable remedies that may be available. If any portion of any covenant or its application is construed to be invalid, illegal or unenforceable then the other portions or their application shall not be affected thereby and shall be enforceable without regard thereto. If any covenant is determined to be unenforceable because of its scope, duration, geographic area or similar factor, then the court or arbitrator making such determination shall have the power to reduce or limit such scope, duration, geographic area or other factor and such covenant shall then be enforceable in its reduced or limited form.

7.8.    The provisions of this Section 7, except subsection 7.3, shall survive expiration or termination of this Agreement.

## 8.   Ownership and Disposition of Medical Records.

8.1.    All medical records relating to services for those patients who were patients of Physician prior to the date of this Agreement shall remain the property of Physician and Physician shall be responsible for maintaining those records. Records of patients seen by Physician during the Term of this Agreement shall be owned by MFA.

8.2.    Notwithstanding Section 6.5.5, copies of patient records shall be furnished to appropriate parties in the following circumstances:

ACADEMIC MPA FT Employment Agreement (Rev 2012.10.25)                                  Page 9 of 14

8.2.1.   A written request for the transfer of medical records may be submitted by a patient and must be accompanied by a signed release from each patient reasonably satisfactory to MFA.

8.2.2.   Copies of records may be transferred when otherwise required or authorized by law.

## 9.  Cooperation.

Physician acknowledges that MFA has a legitimate interest in (1) ensuring continuing care of patients and providing services to its customers and clients when a physician is unable to perform his/her Duties, is unable to continue in practice or this Agreement otherwise is terminated or expires; (2) appropriately billing for and receiving payment for services, including services rendered by Physician during the term of this Agreement; (3) resolving billing disputes; and (4) in defending or resolving legal claims. Accordingly, Physician agrees that despite expiration or termination of this Agreement for whatever reason, he/she will not obstruct MFA's effort to provide continuity of care to its patients nor will he/she obstruct MFA's effort to continue to provide services to its customers and clients.  Physician shall provide reasonable cooperation to MFA in asserting or defending its rights in matters such as those described above, at no additional expense to MFA.

## 10.  Other Applicable Provisions.

10.1.   This Agreement shall be construed in accordance with the laws of the District of Columbia, without regard to any choice of law provisions thereof.

10.2.   This Agreement is personal to Physician and shall not be assigned or delegated by Physician, except with the prior written approval of MFA's CEO or President.

10.3.   This Agreement is binding upon and shall inure to the benefit of the parties and their respective heirs, administrators, executors, successors and permitted assigns.

10.4.   All notices required or permitted by this Agreement shall be made in writing and shall be deemed to have been duly given if sent by registered or certified mail, postage prepaid, with return receipt requested, to MFA's Legal Department and to Physician at the last known permanent address provided by Physician to MFA for its records, or at such other address as either party may designate in writing to the other party.

10.5.   The immediate non-enforcement of any breach or covenant of this Agreement shall not constitute a waiver.  A waiver shall be made in writing and no waiver of a breach or covenant or provision of this Agreement shall be construed as a waiver of a subsequent breach. No act, delay or omission that is done, suffered or permitted by a party shall be deemed to exhaust or impair any right, remedy or power of such party hereunder.

10.6.   This Agreement (including any cover letters, exhibits or schedules hereto) contains the entire agreement between the parties concerning the subject matter contained herein and there are no other terms, covenants, obligations or representations, oral or written, of any kind whatsoever.

Any modification, addition or alteration of this Agreement must be in writing and signed by both parties.

10.7.   The parties agree that all claims or disputes arising under this Agreement be pursued through mediation and arbitration and in accordance with the following process. The parties shall first attempt to resolve claims or disputes internally.  If such attempts are unsuccessful within 30 days after the claim or dispute was first raised, either party may pursue mediation before a single mediator pursuant to the then current rules of the American Health Lawyers Association Alternative Dispute Resolution Rules of Procedures. Should mediation efforts not reach resolution within 60 days, either party may file for arbitration before a single arbitrator in accordance with the then current American Health Lawyers Domestic Alternative Dispute Resolution Rules of Procedures. All dispute resolution efforts shall occur in the District of Columbia and each party shall bear its own costs and fees unless awarded otherwise by the arbitrator consistent with applicable law.

MEDICAL FACULTY ASSOCIATES, INC., d/b/a GEORGE WASHINGTON UNIVERSITY MEDICAL FACULTY ASSOCIATES

PHYSICIAN

Signed: _____
        Stephen L. Badger

Signed: _____

Title:   Chief Executive Officer

Physician:   Scott C. Faucett, MD, MS

Date:   April 19, 2013

Date:   May 3rd 2013

The EFFECTIVE DATE of this Agreement is:   September 1, 2013

The Physician's initial annual draw is:  $ 325,000.00

ACADEMIC MFA FT Employment Agreement (Rev 2012.10.25)

THE GEORGE WASHINGTON UNIVERSITY
MEDICAL FACULTY ASSOCIATES

Exhibit A
Description of Duties

1. Timely completion of patient clinical records for all settings at which the Physician provides services.

2. Submission of timely, complete and correct billing information to MFA.

3. Commitment to the best interests of MFA and the University.

4. Fully participating in the resolution of malpractice complaints.

5. Full commitment to MFA's patient care and quality improvement programs, including constant efforts to improve patient satisfaction.

6. Conduct that is consistent with the ethical standards of MFA and the University.

7. Full commitment and effort to MFA's Risk Management and Corporate Compliance programs.

8. Obtaining and legibly recording a detailed medical history of each patient, including, but not limited to, the patient's chief complaint, his/her present condition, the patient's individual history, and his/her family history, as clinically appropriate.

9. Performing physical examinations, as clinically indicated.

10. Analyzing reports and/or findings of tests and personal examinations in order to assess the medical condition of the patient, including diagnosing his/her injury or illness and formulating a prognosis.

11. If a primary care physician (i.e., a physician practicing in Internal Medicine, Pediatrics and/or Family Practice), referring the patient to other physicians, including specialists and other health care providers, when and if needed.

12. If a specialist physician, obtaining authorization from the patient's primary care physician for any further referral of the patient to other physicians, including other specialists and other health care providers, when and if needed.

13. Prescribing medication and treatment for the patient and recommending appropriate physical and dietary routines and methods for prevention of disease and personal hygiene.

14. Performing various invasive medical procedures as clinically appropriate for the physician's specialty and classification.

15. If a primary care physician in the primary care clinical unit, established by the MFA, responsible

individually for providing and/or coordinating the patient's care for all patients in such physician's panel of patients, and, as a clinical unit, collectively for coordinating all aspects of patient care for such clinical unit's aggregate panel of patients.

16. If a primary care physician, responsible for the coordination of the medical management of his/her panel of patients, twenty-four hours a day, seven days a week, consistent with the cross coverage arrangements within the clinical unit.

17. If a specialist, responsive to the requests for specialty care consultations from the primary care physician, twenty-four hours a day, seven days a week, throughout the service area served by MFA, consistent with the cross coverage arrangements within the department.

18. Relationship of primary care physician and specialist physician characterized as synergistic, with mutual respect, trust, collegiality, and support.

19. Keeping and maintaining appropriate records relating to all professional services rendered.

20. Preparing and attending to all reports, claims, and correspondence necessary or appropriate to the performance of the professional services, and timely completion of all applications, forms and other records necessary to bill for and receive reimbursement from payors for Physician's services.

21. Attending professional conventions and post-graduate seminars as well as participating in professional societies on a reasonable basis.

22. Promoting the professional practice of MFA.

23. Being available to provide professional services to all patients (scheduled, walk-in, or emergency) whenever scheduled to be at, or on call for, MFA or any of its practice locations.

24. Providing coverage when other physician employees are unavailable due to vacations, holidays, illness, and attendance at professional activities.

25. Timely reporting births, deaths, outbreak of contagious diseases, and other information required to appropriate governmental authorities and as required for MFA reporting obligations.

26. Directly supervising nurses and other personnel in accordance with MFA's policies, procedures, and applicable laws. Supervisory responsibilities may include, but not be limited to, interviewing and training new assigned staff, assigning and directing work, addressing complaints and resolving problems, and participating in the hiring, appraisal, reward and discipline of other personnel.

27. Participating in MFA governance, credentialing, peer review activities, risk management, utilization management, quality assurance, and other committees, as required by the MFA.

28. Performing other duties assigned by MFA (including by the Department Chair) from time to time.

29. Being available to perform his/her professional services during the MFA's office hours as

established and mutually agreed upon, from time to time, by MFA and Physician.

30. Following all policies and procedures of MFA.

31. Performing such teaching, medical director and administrative services as requested by MFA.

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH

INFORMATION SHEET

MEDICAL FACULTY ASSOCIATES, INC        Case Number: __2016 CA 003720 B__

vs

Date: __MAY 20, 2016__

Scott Fawcett, MD; The
ORTHOPAEDIC CENTER, P.A.

☐ One of the defendants is being sued
in their official capacity.

Name: *(Please Print)*
RAYMOND C. BALDWIN

| Relationship to Lawsuit |
|---|
| ☒ Attorney for Plaintiff |
| ☐ Self (Pro Se) |
| ☐ Other: _____ |

Firm Name:
SCHMIDT SHAW LLP

Telephone No.:                    Six digit Unified Bar No.:
202-828-3883                      461514

TYPE OF CASE: ☐ Non-Jury      ☒ 6 Person Jury      ☐ 12 Person Jury
Demand: $_____                        Other: TO BE PROVEN AT TRIAL

PENDING CASE(S) RELATED TO THE ACTION BEING FILED
Case No.:_____   Judge:_____   Calendar #:_____

Case No.:_____   Judge:_____   Calendar#:_____

---

NATURE OF SUIT:     *(Check One Box Only)*

### A. CONTRACTS                                       COLLECTION CASES

☒ 01 Breach of Contract
☐ 02 Breach of Warranty
☐ 06 Negotiable Instrument
☐ 07 Personal Property
☐ 13 Employment Discrimination
☐ 15 Special Education Fees

☐ 14 Under $25,000 Pltf. Grants Consent
☐ 17 OVER $25,000 Pltf. Grants Consent
☐ 27 Insurance/Subrogation
      Over $25,000 Pltf. Grants Consent
☐ 07 Insurance/Subrogation
      Under $25,000 Pltf. Grants Consent
☐ 28 Motion to Confirm Arbitration
      Award (Collection Cases Only)

☐ 16 Under $25,000 Consent Denied
☐ 18 OVER $25,000 Consent Denied
☐ 26 Insurance/Subrogation
      Over $25,000 Consent Denied
☐ 34 Insurance/Subrogation
      Under $25,000 Consent Denied

### B. PROPERTY TORTS

☐ 01 Automobile
☐ 02 Conversion
☐ 07 Shoplifting, D.C. Code § 27-102 (a)

☐ 03 Destruction of Private Property
☐ 04 Property Damage

☐ 05 Trespass

### C. PERSONAL TORTS

☐ 01 Abuse of Process
☐ 02 Alienation of Affection
☐ 03 Assault and Battery
☐ 04 Automobile- Personal Injury
☐ 05 Deceit (Misrepresentation)
☐ 06 False Accusation
☐ 07 False Arrest
☐ 08 Fraud

☐ 10 Invasion of Privacy
☐ 11 Libel and Slander
☐ 12 Malicious Interference
☐ 13 Malicious Prosecution
☐ 14 Malpractice Legal
☐ 15 Malpractice Medical (Including Wrongful Death)
☐ 16 Negligence- (Not Automobile,
      Not Malpractice)

☐ 17 Personal Injury- (Not Automobile,
      Not Malpractice)
☐ 18 Wrongful Death (Not Malpractice)
☐ 19 Wrongful Eviction
☐ 20 Friendly Suit
☐ 21 Asbestos
☐ 22 Toxic/Mass Torts
☐ 23 Tobacco
☐ 24 Lead Paint

SEE REVERSE SIDE AND CHECK HERE            IF USED

CV-496/June 2015

# Information Sheet, Continued

## C. OTHERS

- ☐ 01 Accounting
- ☐ 02 Att. Before Judgment
- ☐ 05 Ejectment
- ☐ 09 Special Writ/Warrants
  (DC Code § 11-941)
- ☐ 10 Traffic Adjudication
- ☐ 11 Writ of Replevin
- ☐ 12 Enforce Mechanics Lien
- ☐ 16 Declaratory Judgment

- ☐ 17 Merit Personnel Act (OEA)
  (D.C. Code Title 1, Chapter 6)
- ☐ 18 Product Liability

- ☐ 24 Application to Confirm, Modify,
  Vacate Arbitration Award (DC Code § 16-4401)
- ☐ 29 Merit Personnel Act (OHR)
- ☐ 31 Housing Code Regulations
- ☐ 32 Qui Tam
- ☐ 33 Whistleblower

## II.

- ☐ 03 Change of Name
- ☐ 06 Foreign Judgment/Domestic
- ☐ 08 Foreign Judgment/International
- ☐ 13 Correction of Birth Certificate
- ☐ 14 Correction of Marriage
  Certificate
- ☐ 26 Petition for Civil Asset Forfeiture (Vehicle)
- ☐ 27 Petition for Civil Asset Forfeiture (Currency)
- ☐ 28 Petition for Civil Asset Forfeiture (Other)

- ☐ 15 Libel of Information
- ☐ 19 Enter Administrative Order as
  Judgment [ D.C. Code §
  2-1802.03 (h) or 32-151 9 (a)]
- ☐ 20 Master Meter (D.C. Code §
  42-3301, et seq.)

- ☐ 21 Petition for Subpoena
  [Rule 28-I (b)]
- ☐ 22 Release Mechanics Lien
- ☐ 23 Rule 27(a)(1)
  (Perpetuate Testimony)
- ☐ 24 Petition for Structured Settlement
- ☐ 25 Petition for Liquidation

## D. REAL PROPERTY

- ☐ 09 Real Property-Real Estate
- ☐ 12 Specific Performance
- ☐ 04 Condemnation (Eminent Domain)
- ☐ 10 Mortgage Foreclosure/Judicial Sale
- ☐ 11 Petition for Civil Asset Forfeiture (RP)

- ☐ 08 Quiet Title
- ☐ 25 Liens: Tax / Water Consent Granted
- ☐ 30 Liens: Tax / Water Consent Denied
- ☐ 31 Tax Lien Bid Off Certificate Consent Granted

_____
Attorney's Signature

5/10/16
_____
Date

CV-496/ June 2015



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Telephone: (202) 879-1133

_Medical Faculty Associates Inc._
_____
Plaintiff

vs.                                      Case Number   2016 CA 003720 B

_Scott Faucett; The Orthopaedic_
_Center, P.A._
_____
Defendant

**SUMMONS**

To the above named Defendant:

    You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

    You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

_Raymond C. Baldwin_
Name of Plaintiff's Attorney

_Seyfarth Shaw LLP_
Address

_975 F Street NW_

_Washington DC 20004_

Telephone

如需翻译,请打电话 (202) 879-4828          Veuillez appeler au (202) 879-4828 pour une traduction          Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828 로 전화주십시오           የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

_Clerk of the Court_

By _____
Deputy Clerk

Date   05/23/2016

    IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

    If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

FORM SUMMONS - Jan. 2011                                                                          CASUM.doc



**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

MEDICAL FACULTY ASSOCIATES, INC.
    Vs.                                                C.A. No.    2016 CA 003720 B
THE ORTHOPAEDIC CENTER, P.A. et al
<u>**INITIAL ORDER AND ADDENDUM**</u>

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each Judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Lee F. Satterfield

Case Assigned to:  Judge JOHN M CAMPBELL
Date:  May 23, 2016
Initial Conference: 9:30 am, Friday, August 19, 2016
Location:  Courtroom 519
          500 Indiana Avenue N.W.

Caio.doc

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Lee F. Satterfield

Caio.doc